IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MATTHEW HEADLEY HOLDINGS, LLC ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MCCLEARY, INC., ET AL. ) <br> ) <br> Defendants ) <br> ) | Case No. 02-0654-CV-W-FJG |

**MOTION AND SUGGESTIONS IN SUPPORT OF ORDER
DISBURSING PORTION OF JUDGMENT PROCEEDS**

COMES NOW Wise Foods, Inc. and, by and through undersigned counsel and pursuant to Fed.R.Civ.P. 67, moves the Court for an Order disbursing to Wise Foods, Inc. $65,497.08, plus prejudgment interest at 9 percent annually from December 16, 2003 to the time of disbursement, which distribution should be made from the Judgment proceeds in the above-captioned matter. In support of this Motion, Wise Foods, Inc. states the following:

**I.
UNDISPUTED FACTS**

1. As acknowledged by Plaintiff in recent filings with the Court, Wise Foods, Inc. holds a judgment lien in the approximate amount of $80,000 (the exact amount is $65,497.08 plus 9 percent annual interest from December 16, 2003) against the judgment proceeds currently on deposit with the Clerk of the Court.

2. The above-referenced lien was given by Plaintiff to induce Wise Foods, Inc. to forego collection efforts on an unpaid account that was the subject of Case No. 04CV225040 pending in the Jackson County, Missouri Circuit Court.

1

3. Although the lien was negotiated, discussed, and agreed to with Plaintiff in 2005, a Settlement Agreement and Consent to Entry of Judgment was not filed until February 22, 2006.

4. At the time the above-referenced lien was given by Plaintiff, Wise Foods, Inc. was unaware of the alleged "Assignment" of $1.5 million of the judgment proceeds that had previously been executed by Plaintiff in favor of First Missouri Bank, and Plaintiff nor its counsel made any mention of it in connection with extensive negotiations about the lien.

5. Wise Foods, Inc. only became aware of the "Assignment" within the last few weeks when it received notice of the same from Plaintiff's counsel.

6. There is no financing statement perfecting First Missouri Bank's security interest in, or "Assignment" of, the judgment proceeds.

7. The only legal authority offered by First Missouri Bank for its contention that its "Assignment" has priority over Wise Foods, Inc.'s lien is an unpublished, Tenth Circuit bankruptcy decision interpreting New Mexico law.

8. If the judgment liens have priority over the "Assignment" asserted by First Missouri Bank, there exists sufficient proceeds to pay such liens.

# II.
# ARGUMENTS AND AUTHORITIES

A. <u>FIRST MISSOURI BANK CANNOT MEET ITS BURDEN OF ESTABLISHING THE AGREEMENT IT ENTERED INTO IN SEPTEMBER OF 2004 WITH PLAINTIFF WAS A TRUE ASSIGNMENT. THE AGREEMENT, THEREFORE, IS A SECURITY INTEREST SUBJECT TO THE PRIORITY RULES OF ARTICLE 9</u>.

Eighth Circuit precedent, and cases from other jurisdictions, consistently hold that purported assignments of judgment proceeds are examined with skepticism and the intent of the parties -- rather than how the assignment is denominated -- governs whether the transaction is a true assignment. ***In re Reeves***, 65 F.3d 670, 674 (8th Cir. 1995); ***In re Cohen***, 305 B.R. 886, 902 (9th Cir. 2004) ("Debtors were obligated on a note to appellants. The amount owed was due regardless of whether debtors recovered on the tort claim. The potential settlement was provided as security for the note. . . . If the litigation recovery was less than the debt, the debtors owed the balance. . . .. Thus, the bankruptcy court correctly concluded that the parties intended to create a security interest in the settlement proceeds and did not intend to make an equitable assignment."); ***In re Wiersma***, 283 B.R. 294, 305 (Bkrtcy.D.Idaho 2002) ("An absolute assignment effects a transfer of all an owner's interest in property. In contrast, a security interest is an interest in personal property or fixtures which secures payment or performance of an obligation. While distinguishing between the two types of transactions is sometimes difficult, courts often look past the express language of the documents evidencing a transaction and treat purported assignments as security agreements to give effect to the true nature of a transaction. Courts differentiate between the two transactions by examining the substance of the documents in the context of the surrounding transaction. . . .. In addition, O.H. Kruse apparently gave Debtors no credit on the balance due on the note in

3

consideration of the assignment, something which could be expected were an absolute transfer intended. In light of these facts, the Court holds that Debtors and O.H. Kruse intended to create a security interest, not effectuate an absolute assignment."); ***In re Lampiris***, 194 B.R. 3, 4-5 (Bkrtcy.D.N.H. 1996) ("The first issue is whether Article 9 of the Uniform Commercial Code applies to the assignment. Courts have held that the assignment of a portion of an expected recovery from a cause of action should be treated as a 'general intangible' under Article 9. A general intangible is a catch-all category defined by Article 9 as 'any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money.' Because what was assigned to Pachman & Oshrin by the Debtor was a portion of an expected recovery from the Debtor's personal injury action, it should be treated as a general intangible."); ***In re OLM Associates***, 98 B.R. 271, 274-75 (Bkrtcy.N.D.Tex. 1989) ("Courts should be extremely reluctant to give effect to lending documents that would obviate the need for a creditor to go through state promulgated procedures to recover collateral. Judicial foreclosure proceedings are required to recover pledged collateral unless a statute provides otherwise. A creative draftsman should not be permitted to allow a creditor to deprive a debtor of its due process rights under state foreclosure laws.").

In the ***Reeves*** case, the Eighth Circuit stated the following:

> The parties' intent determines whether a document purporting to effect an absolute assignment of a note will be treated instead as creating a security interest in that note. The bankruptcy court and the district court found that the parties to the Assignment did not intend an absolute transfer of the Fuchs Note, but merely the creation of a security interest. In other words, Marlin's interest in the Fuchs Note became collateral securing the antecedent debt to his parents. Ample evidence supports this finding. Elmer and Marlin both repeatedly referred to the Assignment as "collateral" or "security" for the $260,000 loan to Marlin. The parents conceded in the district court that the Assignment gave them a right to


4

Case 4:02-cv-00654-FJG   Document 462   Filed 07/24/06   Page 4 of 8

> recover only the unpaid balance of their loan to Marlin, not Marlin's entire interest in the Fuchs Note. Marlin collected on the note by settling litigation brought in his own name. Marlin alone directed disbursement of the settlement proceeds. Thus, the Assignment of the Fuchs Note merely created a security interest.

65 F.3d at 674.

The purported Assignment between First Missouri Bank and Plaintiff has all of the earmarks of being a security interest rather than a true assignment. For example, at the time the "Assignment" was made, it was not clear that Plaintiff would receive anything from the above-captioned case. Obviously, had the verdict been reduced to zero, the $1.5 million would still be owed by Plaintiff to First Missouri Bank. This is inconsistent with a true assignment. Also, the fact that the Assignment was only for a portion of the judgment is characteristic of a security interest and not an assignment. That Plaintiff, and not First Missouri Bank, had control of the verdict proceeds is also inconsistent with an assignment. Moreover, it is anticipated that documents entered into in connection with the "Assignment" will show the document was meant to secure the Bank's extension of credit (i.e. was a security interest) and was not meant to take the place of the credit. In other words, undoubtedly the Bank's "books" do not indicate the $1.5 million was forgiven at the time the "Assignment" was signed. Also, any payments made toward the $1.5 million by Plaintiff, prior to the 8th Circuit opinion being released, suggests a security agreement and not a true assignment.

B. <u>MISSOURI LAW PROVIDES THAT AN UNPERFECTED SECURITY INTEREST IS SUBORDINATE TO A LIEN CREDITOR WHO HAS NO KNOWLEDGE OF THE UNPERFECTED SECURITY INTEREST. THUS, FIRST MISSOURI BANK'S UNPERFECTED SECURITY INTEREST IS SUBORDINATE TO WISE FOODS, INC.'S LIEN</u>.

The Missouri Uniform Commercial Code provides that an unperfected security interest (such as that held by First Missouri Bank) is subordinate to a lien held by a lien

creditor. *See* Rev.Mo.Stat. § 400.9-317(a) ("A security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before . . . [t]he security interest . . . lien is perfected."); *See also*, Rev.Mo.Stat. § 400.9-201 cmt. 2 ("For example, Section 9-317 subordinates unperfected security interests to lien creditors . . .."); ***Gold Medal Products, Inc. v. Love Enterprises, Inc.***, 766 S.W.2d 759, 760-61 (Mo.App. S.D. 1989).

The ***Gold Medal Products*** case is particularly instructive here as it dealt with an assignment of proceeds from a lawsuit, and the question of whether the assignment (held to be a security interest by the Court), which was not accompanied by a financing statement, had priority over a later-in-time judgment lien against the same proceeds. 766 S.W.2d at 762. Ultimately, the Court ruled the assignment had priority but only because the judgment creditor had actual knowledge of the assignment. 766 S.W.2d at 764. The Court's analysis clearly shows the judgment lien would have been given priority had it not been for the actual knowledge of the assignment held by the judgment creditor:

> Here we will treat ... conflicts between a secured creditor and a lien creditor who is not a trustee in bankruptcy. Section 9-301 governs, and provides in general that an unperfected secured creditor loses to a lien creditor and, by negative implication, that a perfected secured creditor beats a lien creditor. ...
> The most important provision is (1)(b) which renders an unperfected secured creditor subordinate to the rights of one who 'becomes a lien creditor *without knowledge of the security interest* and before it is perfected....' Thus, if a bank takes a security interest in debtor's equipment but fails to file a financing statement or to take possession, and an unsecured creditor levies against the property and so procures a judicial lien on it, the unsecured creditor will have a prior right *unless he had 'knowledge' of the security interest when he procured his lien...."*
> (Emphasis ours.)
> J. White and R. Summers, Uniform Commercial Code § 25-2, pp. 901-902 (1972). See also 9 R. Anderson, Uniform Commercial Code § 9-301:21, p. 34 (1985). Also to be borne in mind is that a "security agreement" means an agreement which creates or provides for a security interest. Section 400.9- 105(1)(h). With certain exceptions which the parties have assumed are not applicable, an assignment of a right to the proceeds from an impending lawsuit, if taken as security for a debt, constitutes a security

6

agreement creating a security interest in the right to proceeds. *Board of County Commissioners, Etc. v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d 1251, 1255[4] (Colo.App.1978); *Estate of Hill,* 27 Or.App. 893, 557 P.2d 1367, 1372 (1976); *Friedman, Lobe & Block v. C.L.W. Corporation,* 9 Wash.App. 319, 512 P.2d 769, 771 (1973); B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code para. 1.03, p. 1-16 (2d ed. 1988). Such an assignment is not an assignment of "a right represented by a judgment" so as to be excluded from the application of Article 9 by § 400.9-104(h); it constitutes the assignment of a "general intangible" as that term is defined by § 400.9-106. *Board of County Commissioners, Etc. v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d at 1255[4]; *Friedman, Lobe & Block v. C.L.W. Corporation,* 9 Wash.App. 319, 512 P.2d at 771. Such an assignment of proceeds is not a perfected lien until a financing statement is filed pursuant to § 400.9-302(1). *Board of County Commissioners, Etc. v. Berkeley Village,* 40 Colo.App. 431, 580 P.2d at 1255; *Sams v. Redevelopment Authority,* 436 Pa. 524, 261 A.2d 566, 568 (1970). Our inquiry on this appeal is whether, upon the facts presented, defendant's assignment of the anticipated proceeds of a lawsuit is superior to the plaintiff's claim to those proceeds as a garnishment creditor. The trial court held the assignment was entitled to priority. We conclude the trial court's ruling was not erroneous for any reason assigned as error in this court.

766 S.W.2d at 760-61.

WHEREFORE, Wise Foods, Inc. respectfully requests that the Court issue an Order directing the Clerk of the Court to disburse, from the Judgment proceeds in the above-captioned matter, $65,497.08 plus 9 percent annual interest from December 16, 2003 to the date of the Court's Order[1], which disbursement should be made payable to the Trust Account of REAVEY LAW LLC on behalf of Wise Foods, Inc., and for such other and further relief as the Court deems just and equitable.

---

[1] The accrued interest through June of 2006 is $14,954.87. For each day after June 31, 2006, $16.15 should be added as the daily interest rate.

Respectfully Submitted,

**REAVEY LAW LLC**


By:      s/ Patrick G. Reavey    .
     Patrick G. Reavey, MO#47365
     Livestock Exchange Building
     1600 Genessee, Suite 303
     Kansas City, Missouri 64102
     (816) 474-6300
     Fax: (816) 474-6302
     Patrick@reaveylaw.com
     *Attorney for Wise Foods, Inc.*


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 24, 2006, this Entry of Appearance was electronically filed with the Clerk of the Court using the CM/ECF system which system notifies counsel of record of such filing.


     s/ Patrick G. Reavey