IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MATTHEW HEADLEY HOLDINGS, LLC, ) <br> d/b/a HEARTLAND SNACKS ) <br> f/k/a INCITO CAPITAL GROUP, LLC ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> McCLEARY, INC., ) <br>     Defendant. ) | No. 02-0654-CV-W-FJG |

## ORDER

Pending before the Court Pending before the Court are (1) Plaintiff's Motion for Entry of Order Permitting Partial Distribution of Judgement Funds (Doc. No. 452); (2) Motion of Blackwell Sanders Peper Martin LLP for the Disbursement of Funds on Deposit with the Court (Doc. No. 453); (3) Wise Foods, Inc.'s Motion and Suggestions in Support of Order Disbursing Portion of Judgment Proceeds (Doc. No. 462); (4) Motion of Shearer's Foods for Disbursement of Funds on Deposit with the Court (Doc. No. 463); (5) Motion of Colorado Gold Chips, Inc. for Disbursement of Funds on Deposit with the Court (Doc. No. 468); (6) Motion of Polsinelli Shalton Welte Suelthaus PC for Partial Distribution of Judgment Funds (Doc. No. 476); (7) Plaintiff's Motion to Strike (Doc. No. 497)[1]; (8) Plaintiff's Amended Response to All Claimant's [sic] Motions for Disbursement and Supplemental Status Report (Doc. No. 489), and Blackwell's Sanders' Motion for Leave to File Supporting Exhibits Under Seal and Suggestions in Support (Doc. No. 493); (9) Motion of the First Bank of Missouri for the Disbursement of Funds on Deposit with the Court (Doc.

---

[1] Plaintiff moves to strike various filings by non-parties and non-claimants Gaddis Laboratories, LLC and Michael Gaddis (together, "Gaddis"). As the issues raised by Gaddis (and plaintiff in its motion to strike) are tangential to the issues raised by the various claimants (and likely ought to be raised in proceedings outside this Court), the Court has given very little weight to the assertions made by Gaddis in its consideration of the various issues presented in this Order. Therefore, the Court will **DENY** plaintiff's motion to strike (Doc. No. 497) as moot.

No. 466) and Wise Foods' Motion for Leave to File Supplemental Response to First Bank of Missouri's Motion for Disbursement (Doc. No. 477); and (10) Trion Ventures I, L.P.'s Objection to Claim of First Bank of Missouri and Motion for Distribution of Judgment Proceeds, with Suggestions in Support (Doc. No. 482).

Also before the Court are the various parties' and claimants' responses to the Court's Order (Doc. No. 499) asking for further briefing on the issue of this Court's jurisdiction. See Doc. Nos. 500, 501, 502, 503, 504, 505, 506, 507, 508, and 509.

As an initial matter, after reviewing the parties' and claimants' briefs regarding jurisdiction, the Court finds that the law supports this Court's exercise of jurisdiction over the funds in the Court's registry. See Doc. Nos. 500, 501, 502, 503, 504, 505, and 506, and the cases cited therein.[2] Therefore, the Court will consider the various claims to the proceeds in the Court's registry, and will direct the funds to be distributed as set forth more fully in this Order.[3]

**I.  Motion of Blackwell Sanders Peper Martin LLP for the Disbursement of Funds on Deposit with the Court (Doc. No. 453), Plaintiff's Amended Response to All Claimant's [sic] Motions for Disbursement and Supplemental Status Report (Doc. No. 489), and Blackwell's Sanders' Motion for Leave to File Supporting Exhibits Under Seal and Suggestions in Support (Doc. No. 493)**

Blackwell Sanders Peper Martin, LLP ("Blackwell") has a statutory fee lien pursuant

---

[2]Ironically, upon the Court's invitation for further briefing on this issue, the only party or entity challenging the Court's continued jurisdiction is plaintiff, one of the parties that requested deposit of the funds in the Court's registry in the first place.  Given that plaintiff's actions (in incurring numerous debts that it then failed to report to the Court in its initial filings requesting this procedure) created this debacle, the Court is not inclined to give much weight to plaintiff's opinion on this issue (especially given that plaintiff's cited cases tend to not stand for the proposition plaintiff asserts).  The Court further finds plaintiff's suggestion in Doc. No. 507 that the funds be returned to plaintiff to be completely without merit.

[3]Although various claimants request a hearing before the Court, the Court finds that a hearing is unnecessary, given the voluminous and exhaustive filings the claimants have already made.  To the extent that the Court needs additional information before implementing the distribution of funds, the Court will request same within this Order.
2

to R.S.Mo. § 484.130 in the amount of $278,513.58. Additionally, Blackwell notes that plaintiff owes it $294.96 in paralegal fees incurred in assisting plaintiff with its bill of costs in this matter, as well as court reporter fees of $952.00.[4] As Blackwell was plaintiff's first attorney in the prosecution of this matter, this statutory fee lien pre-dates all other liens and has priority over all other claimants' claims.

Plaintiff does not claim that Blackwell's fees should not have priority over other claims; instead, plaintiff complains that its former counsel's fees are too high, and requests a bench trial on attorney's fees (see Doc. No. 456). Plaintiff provides very little detail as to what is objectionable about Blackwell Sanders' bills in its original opposition to Blackwell's motion for distribution of funds.[5] In its original brief, Blackwell notes that plaintiff already

---

[4] Blackwell also notes that plaintiff is indebted to it for trademark work ($54,510.05), and employment work ($5,659.41 plus 9% contractual interest, which as of June 30, 2006, the interest equals $2,044.61). However, these amounts requested are for work outside of the current litigation and should not have first priority over other claimants' requests.

[5] On October 6, 2006, plaintiff filed its "Reply to Blackwell Sanders Reply to Plaintiff's Amended Response Filed September 6, 2006" (Doc. No. 494). Notably, this filing is in the nature of a sur-reply filed without permission of the Court. Plaintiff again asserts that a hearing is necessary, and states that it had previously "avoided listing for this Court the numerous complaints regarding the actual billing but instead took its opportunity to list for the Court the general nature of all complaints Plaintiff had as to Blackwell's representation and manner of conducting business in this case." Plaintiff then states the complaints it anticipates putting forward in a hearing, noting in particular (1) alleged problems with the engagement letter; (2) some employee of Blackwell billing plaintiff every working day except 13 until May 31, 2003; (3) stating that "no movement" was made by Blackwell to push this case toward trial in the first year (the Court notes the assertions made by plaintiff in this regard are verifiably false, such as that there was no scheduling order or trial setting during the period when Blackwell represented plaintiff, when in fact on September 13, 2002, the Scheduling Order was entered (Doc. No. 33), setting trial for August 4, 2003); (4) the attorney Plaintiff had initially chosen as lead trial attorney left the firm in February 2003 but plaintiff was not notified for two months; (5) Blackwell employees publicly disparaged Mark Stisser (plaintiff provides no support for this assertion, and provides no examples of this "disparagement"); and (6) it is Mark Stisser's "strenuous contention" that at the end of the March 12, 2003 meeting with Blackwell attorneys, no agreement had been reached (again, plaintiff provides no support for this proposition, such as an affidavit of Mr. Stisser). Notably, however,

3

has admitted in its filings that "Blackwell Sanders' statutory lien claim for $278,808.54 [attorney fees plus paralegal fees] unquestionably takes priority over all other claims." See Doc. No. 452 ¶ 3, Doc. No. 452 at ¶ 4. Further, Blackwell indicates in its reply (Doc. No. 470) that plaintiff should be estopped from now claiming that its fees were unreasonable, as plaintiff's attorney, Michael Healy, advised Blackwell attorney Finch of his intent to cause payment of his own fee as well as the fees of Tim Dollar and the Bartimus firm from the judgment proceeds, and asked that Blackwell not challenge the payment, assuring Finch that Blackwell's fees would be paid.[6] Plaintiff does not dispute this assertion made by Blackwell attorney Finch. Therefore, this Court agrees that plaintiff is estopped from claiming that it does not owe the full amount of Blackwell's attorney fee lien associated with the underlying lawsuit.[7] This Court **GRANTS** Blackwell's motion, and finds that Blackwell's attorney lien should be enforced in the amount of $278,808.54 plus interest plus prejudgment interest from June 1, 2006 through the date of payment (as Blackwell made demand for payment on June 1, 2006).

In accordance with this finding, Blackwell is directed to submit on or before **March 15, 2007,** a brief addressing the total amount of interest owed on its attorney fee lien, as

---

plaintiff does not dispute that its counsel represented to Blackwell that it would not dispute Blackwell's fees as long as Blackwell agreed to not oppose deposit of the judgment funds in the Court's registry.

[6]Attorney Finch provides an affidavit stating that he relied on this assurance, and Blackwell therefore took no action to protest payment of other counsel even though Blackwell was entitled to like treatment.

[7]As the Court finds that plaintiff is estopped from denying the amount of attorney's fees, the Court finds it unnecessary to consider to evidence Blackwell desired to submit under seal. See Blackwell's Sanders' Motion for Leave to File Supporting Exhibits Under Seal and Suggestions in Support (Doc. No. 493). Accordingly, this motion (Doc. No. 493) will be **DENIED AS MOOT.**

4

well as suggesting a procedure for payment from the funds in the Court's registry[8].

**II.    Motion of Polsinelli Shalton Welte Suelthaus PC[9] for Partial Distribution of Judgment Funds (Doc. No. 476)**

Next in priority is Polsinelli Shalton Flanigan Suelthaus PC ("Polsinelli"), which has a statutory fee lien and judgment lien in the amount of $34,916. Polsinelli has a statutory attorney's fee lien for its representation of Weavers Snack Food and Potato Chip Company ("Weavers") in the underlying lawsuit. Plaintiff entered into an indemnification agreement with Weavers, whereby Plaintiff engaged Polsinelli to represent Weavers in the underlying lawsuit. Plaintiff did not pay Polsinelli, and instead Polsinelli commenced an action in the Circuit Court of Jackson County, Missouri to recover its fees. In February 2006, plaintiff and Polsinelli entered into a settlement agreement, and plaintiff confessed judgment to Polsinelli in the amount of $34,016.00. See Doc. No. 501. Plaintiff does not challenge the amount of this lien.

Accordingly, this Court **GRANTS** Polsinelli's motion, and finds that Polsinelli's attorney lien/judgment lien should be enforced in the amount of $34,016.00 plus any applicable interest. In accordance with this finding, Polsinelli is directed to submit on or before **March 15, 2007,** a brief addressing the total amount of interest owed on its attorney fee/judgment lien, as well as suggesting a procedure for payment from the funds in the Court's registry.

**III.   Motion of Shearer's Foods for Disbursement of Funds on Deposit with the Court (Doc. No. 463)**

---

[8]In particular, with regard to these requests, the Court wishes the claimants to provide information as to whom the checks should be made payable, as well as giving a contact for the Clerk's Office to call to arrange pick-up of the checks.

[9]Polsinelli recently changed its firm name to Polsinelli Shalton Flanigan Suelthaus PC, and hereinafter any reference to Polsinelli refers to the firm under its new name.

5

Third in priority among remaining claimants is Shearer's Foods[10], which has a judgment lien relating to a judgment entered on January 24, 2006, in the amount of $110,357.17 together with interest at the statutory rate of 9% from January 20, 2004 until paid in full, together with costs in the amount of $81.[11] Plaintiff does not challenge the amount of this lien.

Accordingly, this Court **GRANTS** Shearer's Foods' motion, and finds that Shearer's Foods' judgment lien should be enforced in the amount of $110,357.17 plus any applicable interest. In accordance with this finding, Shearer's Foods is directed to submit on or before **March 15, 2007,** a brief addressing the total amount of interest owed on its judgment lien, as well as suggesting a procedure for payment from the funds in the Court's registry.

### IV. Wise Foods, Inc.'s Motion and Suggestions in Support of Order Disbursing Portion of Judgment Proceeds (Doc. No. 462)

Fourth in priority is Wise Foods, which has a judgment lien relating to a judgment entered on February 22, 2006[12], in the amount of $65,497.08 plus 9 percent annual interest from December 16, 2003. Wise Foods indicates the accrued interest through June of 2006 is $14,954.87, and for each day after June 31, 2006, $16.15 should be added as the daily interest rate. See Doc. No. 462. Plaintiff does not challenge the amount of this lien.

Accordingly, this Court **GRANTS** Wise Foods' motion, and finds that Wise Foods' judgment lien should be enforced in the amount of $65,497.08 plus any applicable interest. In accordance with this finding, Wise Foods is directed to submit on or before **March 15,**

---

[10]The Court will consider First Bank of Missouri's assignment of judgment proceeds below; needless to say the Court does not find that First Bank of Missouri's claim has priority over the claims of certain other creditors of plaintiff.

[11]The total amount owing as of July 24, 2006 is $131,111.97. See Doc. No. 463.

[12]The agreement as to this lien was reached in 2005, but a settlement agreement and consent to entry of judgment was not filed until February 22, 2006, in Case No. 04CV225060 in Jackson County, Missouri Circuit Court. See Doc. No. 462.

6

**2007,** a brief addressing the total amount of interest owed on its judgment lien, as well as suggesting a procedure for payment from the funds in the Court's registry.

V. **Trion Ventures I, L.P.'s Motion for Distribution of Judgment Proceeds, with Suggestions in Support (Doc. No. 482)**

Trion Ventures' interest is next in line of priority. Trion Ventures has a $400,000 partial assignment and guaranty dated March 28, 2006, with a UCC financing statement filed on June 2, 2006. See Doc. No. 482. Notably, the $400,000 partial assignment was to secure a $400,000 line of credit to Plaintiff and Heartland Snacks supplied by Trion. Trion notes in its motion for disbursement (Doc. No. 482) that "[r]ecently, after determining that the judgment may be insufficient to support the entire $400,000 partial assignment to Trion, the line of credit was reduced from $400,000 back to $250,000." Doc. No. 482, p. 2, n. 7.

Given that the line of credit afforded to plaintiff has now been reduced and given that a total award of $400,000 would likely exhaust the remaining funds in the judgment fund given the amounts of the previous four liens (preventing further creditors from being paid anything), the Court finds that in the interests of equity the amount of money owed to Trion should be $250,000 plus applicable interest. Accordingly, Trion's motion for distribution (Doc. No. 482) is **GRANTED IN PART**. In accordance with this finding, Trion Ventures is directed to submit on or before **March 15, 2007,** a brief addressing the total amount of interest owed, as well as suggesting a procedure for payment from the funds in the Court's registry.

VI. **Motion of Colorado Gold Chips, Inc. for Disbursement of Funds on Deposit with the Court (Doc. No. 468)**

Colorado Gold Chips is next in priority; it entered into a $440,000.00 partial assignment of judgment dated May 16, 2006. Notably, the amount owed to Colorado Gold Chips based on this assignment appears to be in flux, as Colorado Gold Chips apparently is still a supplier to Plaintiff. In plaintiff's most recent filing regarding jurisdiction (Doc. No.

507), plaintiff states that Colorado Gold Chips has been paid in full for this amount; in its response (Doc. No. 509), Colorado Gold indicates that plaintiff still owes Colorado Gold an outstanding balance in the amount of $333,790.20 (only $54,329.18 of which is current).

The Court is inclined to grant disbursement of funds to Colorado Gold Chips and will **PROVISIONALLY GRANT** Colorado Gold Chips' motion for disbursement (Doc. No. 468); however, prior to making any distribution, Colorado Gold Chips shall provide, on or before **March 15, 2007,** a brief (with supporting documentation) addressing the total amount of the balance owed as of May 16, 2006 that remains unpaid by plaintiff, as well as suggesting a procedure for payment from the funds in the Court's registry.

## VII. Remaining Attorney's Fees Owed to Blackwell

To the extent that any funds remain in the Court's registry once the previously-described disbursements have been made, the Court finds that Blackwell's remaining attorney's fees ($54,510.05 for trademark work and $5,659.41 plus interest for employment work) shall be paid. The Court will make a final determination as to this distribution after receiving the briefs from the various claimants addressing the total amounts due, including interest.

## VIII. Motion of the First Bank of Missouri for the Disbursement of Funds on Deposit with the Court (Doc. No. 466), Wise Foods' Motion for Leave to File Supplemental Response to First Bank of Missouri's Motion for Disbursement (Doc. No. 477), and Plaintiff's Motion for Entry of Order Permitting Partial Distribution of Judgement Funds (Doc. No. 452)

First Bank of Missouri indicates that it has a Partial Assignment of Judgment Proceeds, in the amount of $1,500,000, pursuant to a Loan Modification Agreement dated September 27, 2004 (Ex. B. to Doc. No. 466). If all the Court was concerned with was the timing of the liens/assignments, this bank's assignment would come next in priority after the Polsinelli attorney fee lien, as it appears to be the earliest of the liens/assignments. However, as noted by various claimants, there are numerous problems with the assignment to the bank, namely: (1) the assignment to First Missouri Bank is to secure the individual

8

indebtedness of Mark and Eric Stisser to the bank, which appears to be an attempt by the Stissers to have plaintiff pay their own personal debts at the expense of creditors of plaintiff.  See Ex. A to Doc. No. 464; Hawkins v. Mall, Inc., 444 S.W.2d 369, 387 (Mo. 1969) (a corporation may, with the consent of its stockholders, pledge corporate assets to secure the personal indebtedness of one of its officers, but only if the rights of creditors are not affected); R.S.Mo. §§ 428.024, 428.029, 347.109; (2) the bank failed to file a UCC financing statement perfecting a lien against the assets of Plaintiff (and instead, filed a UCC financing statement against substantially all the assets of Heartland Snacks, LLC), and those creditors who filed financing statements ought to be given priority. See Doc. No. 464 (Polsinelli's brief), Doc. No. 487 (Wise Foods' reply brief), Doc. No. 463 (Shearer's Foods' brief), Doc. No. 482 (Trion's brief); (3) other creditors were not informed of the alleged assignment of $1.5 million to the bank when negotiating settlements relating to the judgment amount, and thus should be paid prior to the bank.  See Wise Foods' Motion, Doc. No. 462, Polsinelli's brief in support of jurisdiction, Doc. No. 501; and (4) although the bank asserts that the Assignment was incorporated in and made a part of the May 26, 2006 Promissory Note (Ex. D to Doc. No. 466), the May 26, 2006 Promissory Note indicates that this partial assignment is collateral for the note, along with other commercial guarantees, and as the partial assignment was entered into to secure payment of the note instead of replacing the note (the assignment did not reduce the amount of the note or take the place of the note), at best, the Bank has an unperfected security interest in the judgment proceeds. See Wise Foods' response to the Bank's motion for disbursement, Doc. No. 474, and Trion Ventures' Objection to Claim, Doc. No. 482.

After considering the various claimants' briefs, the Court finds that First Bank of Missouri's partial assignment cannot take priority over the liens of the previously-listed creditors, as First Bank of Missouri's lien was made to secure debt of plaintiff's officers, and not the debt of plaintiff itself.  Plaintiff's legitimate creditors ought to be paid first. Furthermore, as the bank failed to perfect its security interest in the judgment proceeds, the

Court is unwilling to place the bank's claim ahead of those claimants which followed the proper procedures. Accordingly, Motion of the First Bank of Missouri for the Disbursement of Funds on Deposit with the Court (Doc. No. 466) is **DENIED** to the extent that it seeks priority of the distribution of its claims. Furthermore, plaintiff's motion for entry of order permitting partial distribution of judgment proceeds (Doc. No. 452, which sought an order disbursing $200,000 of judgment proceeds to First Bank of Missouri prior to the distribution to any other claimant) is **DENIED.** Finally, as the Court was able to reach this conclusion without the proposed supplemental brief submitted by Wise Foods, Wise Foods' Motion for Leave to File Supplemental Response to First Bank of Missouri's Motion for Disbursement (Doc. No. 477) is **DENIED AS MOOT.**

To the extent that any funds remain after disbursements are made as to all the previously-listed claimants, however, the bank is next in line for payment. The Court will make a final determination as to any distribution to be made to the bank after receiving the briefs from the various claimants addressing the total amounts due, including interest.

### IX. Claims of Vern Stisser/Eric Stisser Revocable Trust/Mark Stisser Revocable Trust

The various claimants have noted that the Stissers have filed UCC financing statements related to the judgment amount; however, none of the Stissers have made a claim as to the judgment amount being held by the Court. Additionally, from the various filings of the other claimants, it appears as though the UCC filings made in relation to these claims post-date the other claimants' claims.

As these persons (who certainly have knowledge of these proceedings as principals of plaintiff) have failed to assert a claim to the judgment fund before this Court, no distribution to any of the Stissers will be allowed.

**IT IS SO ORDERED.** /s/ Fernando J. Gaitan, Jr.
Fernando J. Gaitan, Jr.
Dated: __3/9/07_____ Chief United States District Judge
Kansas City, Missouri